The next case today is United Steel Paper and Forestry Rubber Manufacturing Energy Allied Industrial and Service Workers International Union et al. v. National Grid et al. Appeal Number 21-1833. Attorney Litwin, please take the podium and introduce yourself for the record. May it please the Court. Good morning. My name is Matthew Litwin and I represent the United Steelworkers International Union and the United Steelworkers Local 12003. Judge Lynch, if I may, can I reserve two minutes for rebuttal? You may. Thank you, Your Honor. To begin, we recognize that standing is a threshold question in this matter. There should be no doubt that the Union has standing to compel arbitration of the disputes which we seek to compel arbitration over. The Union was denied arbitration under a bargain for arbitration provision. The Court's compelling of arbitration will remedy that injury. The Union also has associational standing inasmuch as its affected members, who I will discuss in a moment, would have standing to sue. The Union's organizational purpose is to advance and protect the interests of its members. The members here do not need to be partied to the suit in order for us to make the necessary claims or obtain the necessary relief. To the extent that there is doubt as to whether the Union has standing here, we would ask that you remand the issue to the District Court to resolve or to allow for the Union to conform our complaint to include the necessary parties. Yes, please. The harder issues are ahead of you. Yes, Your Honor. This case is about whether a particular dispute is arbitrable under a broad without receiving their benefits, totaling a loss of what we understand to be around $30,000, naturally putting into jeopardy the ability for these retirees to pay bills and expenses. The delay was caused by the application of a rule that was not collectively bargained and one that was found exclusively in the summary plan document. That rule requires that employees call a so-called pension connect center at least 45 days prior to their desired retirement date or else risk delay in the commencement of their benefits. As a result of this, of the delay in benefits, the Union sought resolution through what's known as the Joint Pension Committee, which is a joint resolution process located in the component plan of the pension plan. The Joint Pension Committee is broadly tasked with determining the rights of employees applying for or receiving benefits under the plan. The JPC reviewed the issue and deadlocked. It resulted in a tie. Thereafter, the Union appealed the deadlock to arbitration. Let me ask you a question to help understanding how these clauses work together. Um, if a case is referred to the Joint Pension Committee on which it doesn't have jurisdiction, is that arbitrable? No, your honor. Okay, so and that's how I read it as well. So, as I understand the agreement to the other side, they're saying that the Joint Pension Committee has no power to rule on questions other than questions of eligibility. Yes, your honor. Do you agree with that? No, we do not, your honor. So, how do you get around then the first clause of 1202 which says the joint committee is formed to determine questions of eligibility under the plan? Your honor, that is a general statement as to the JPC's purpose. The more specific language in the second half of section 12.02 broadly grants the JPC the right to determine the rights of employees applying for or receiving retirement allowances. And we urge that that specific language trump the more general language and they can be read cohesively in that determining questions of eligibility is one of the many things the JPC can do in determining the if we take the language in 1202 which seems to say it's formed to determine questions of eligibility. As I understand your argument, though, you're saying when you look at that, though, you have to look also at the language under the further down in 1202 which refers to shall have powers just necessary for the process to determine rights of any employees applying for That's correct, your honor. But aren't we talking about right now how one interprets the plan? In other words, how one interprets what the scope of the joint pension committee's jurisdiction is as opposed to interpreting an arbitration clause which we only get to once we find out that under the plan it is something that is that triggers the arbitration clause? Your honor, the scope of the joint pension committee is part and parcel here to the arbitration provision. And so in determining the scope of the arbitration provision, we must look at the JPC. The JPC and the neutral arbitrator form two parts of a joint resolution process. And so, your honor, we would argue that the arbitrability analysis under which any ambiguities as to the scope of arbitrable issues, which the scope of the JPC's authority is tied to that question, should be resolved. Isn't there some tension there? Because by statute, the plan administrator or plan fiduciary is charged by Congress and by the Supreme Court with having the discretion to interpret the plan and resolve ambiguities in the plan. And yet you're saying that because this ambiguity can be resolved in a way which if resolved that way would therefore trigger the arbitration clause, the plan administrator loses its ability to arbitrate or interprets the partial of the plan that needs to be resolved in order to trigger the arbitration clause. Your honor, you raise an important point regarding the reach of the plan administrator in connection with article 12 of the component plan. Section 12.01 of the component plan, however, specifically provides that the master plan's rules of administration shall only apply except for as otherwise stated in the administration rules of the component plan. Thus, because we have the JPC and the neutral arbitrator who are tasked with administering the component plan here, the exercise of the plan administrator's authority under the do not apply. Did the entire subsidiary plan? Except so where the component plan rules under the section article 12 provide otherwise, the plan administrator's authority does not apply. So to the extent that the... But does it apply otherwise anywhere in the component plan? That is our understanding, your honor, and that we have a carve out here under article 12 and but though of course the JPC and the and the arbitrator can evaluate the rights and the compliance of, for example, plan administrator's determinations with the rights of applicants or employees. So first, well, we covered great ground there. The scope of the arbitration clause is broad here, and as I just explained, it is determined in large part by the scope of the JPC's authority to determine the rights of employees applying for or receiving benefits under the plan. Now, this dispute here concerns the propriety of the application of a rule that caused the delay in the commencement of these employees benefits. In other words, this is a question about whether or not these employees were entitled to begin receiving benefits on their retirement date. That is a dispute that concerns their rights under the plan and therefore is and because it is not one that concerns a disability determination, which is specifically exempted from the scope of arbitration, and because the JPC deadlocked on the issue, we get to arbitrate the issue. Now, the company and the district court found that the general purpose language or the and the company urges that the general purpose language circumscribes the JPC's authority here to determining questions of eligibility, and for the reasons that I explained to Judge Kayada, that argument lacks support given the specific granting of the JPC with the authority to determine rights broadly. But nonetheless, even if we are limited to questions of eligibility, this is a question of eligibility because this dispute is about whether or not these employees were eligible to begin receiving benefits on their retirement date, and to the extent that there are any ambiguities in that regard, federal or under the settled precedent, such ambiguities must be resolved in favor of arbitration. So what you're saying is that in your scenario, even in the worst case scenario, there's ambiguity and it should go to arbitration no matter what? That's correct, your honor. Yes. Counsel, do we draw anything from the fact that the JPC in deadlocking did not say um, we lack jurisdiction, therefore we deadlock, that it looked like exactly the sort of situation which would lead directly to the arbitration clause? Your honor, it's significant that the JPC did not refer the matter back to the parties, making explicit that they lacked authority here. And, um, for that reason... Has the JPC done that before? Have there been instances where they do refer back to the parties because they say they do not have authority? Your honor, honestly, I do not know. Okay. So I, um, lastly, the district court found and the company urges that not only should the general purpose language circumscribe the JPC's authority, but that it should also be read narrowly, that only deal with threshold questions of eligibility. And we urge this court to, um, not adopt that reading because that would, that would pose a contradictory reading of the entire provision and that it would render meaningless the grant of authority to the JPC to determine questions or determine the rights of employees already receiving benefits. In other words, if an employee is already receiving benefits, there's no, the threshold question of eligibility has been met. And so for that reason, even if you were to find that the JPC was limited to questions of eligibility, it, questions of eligibility should still be read broader than, um, how the company will, will, will insist you read it. One quick question. You indicated at the outset that some aspect, and I might've missed exactly what you were saying, was negotiated between the union and the company. Was this entire plan the subject of negotiation? The, um, the benefit, the, the pension benefit is regularly, uh, uh, bargained. The multiplier is regularly bargained and is recognized in the, uh, collective bargaining agreement between the uh, article 12 of the component plan recognizes that the JPC was formed, uh, by the unions and the, uh, plan administrator. And, uh, we argue that the reference to parties throughout article 12 includes a reference to the, the, the union. With that, um, I, I, uh, I've actually- And you've reserved time. Right. Um, could I, may I reserve the rest of my time, uh, for rebuttal to the extent I have any, any more? Yes, yes, yes. We'll hear you. Thanks, Your Honor. Thank you, Mr. Litwin. Mr. Collins, please, uh, take the podium and introduce yourself on the record to begin. May it please the court, Patrick Collins for the appellees. Uh, Your Honors, make no mistake that this case is, uh, an attack on the authority of the plan administrator's powers under the plan to establish reasonable rules for the applications of pension benefits. Um, I need to correct at the outset a few of my, my, my brother's statements, uh, at the start of his argument. Uh, the plan, while certain terms are collectively bargained, um, the plan itself, uh, is not a subject of collective bargaining. In the record, Your Honors have a, uh, amendment to the plan that, um, was established, uh, in accordance with the plan's procedures. The plan is amended periodically. Um, there are many different unions' employees covered by the plan. The plan explicitly in Article 12 makes reference to five different local unions, not only local 1203 of the steel workers, the one at issue here. Um, and the, uh, plan administrator has the power to amend the plan, uh, uh, uh, consistent with, and the sponsor, National Grid and National Grid USA Service Company, have the power to amend the plan consistent with its purposes. Um, also, there are references to the revance hearing, unable to pay bills. Excuse me. Yes. So, if the plan has, administrator has the power to amend the plan, I take it he also has the power to amend the plan consistent with whatever is going on with the collective bargaining with the union, correct? That's correct. If a collective bargaining agreement... There is nothing in ERISA law that prohibits a plan administrator from, uh, putting in plan provisions, such as the limitation on the master plan here, that, um, uh, accord, uh, recognition to, uh, the collective bargaining agent and to the demands of the, uh, excuse me, to the negotiated outcomes of disputes, correct? Uh, I'm sorry, Judge Lynch, I'm not sure I understood your question. Which reference, which provision of the plan you're referring to? I'm asking about ERISA and whether there is any limitation in ERISA that prohibits a plan administrator from interpreting or amending a plan in a way which would take account of the fact that, uh, it is a plan for employees with collective bargaining agents. The plan administrator is a fiduciary, Your Honor, as you know, and so, no, the plan must operate in accordance with its fiduciary responsibilities, but there is no particular limitation as to what a collective bargaining agreement might say, and following... No, no, no. Is there any limitation in ERISA on a plan administrator choosing to administer the plan consistently with the collective bargaining agreement? No, no, Your Honor, not that I'm aware of. That's fairly obvious, isn't it? Yes, and I don't think there's any contention in this case that the plan administrator did violate the CBA in any way. Uh, all right, proceed. There is no contention, Your Honor. The contention here is that the, as my brother said, the 45-day rule, as the union calls it, the rule that's set forth in the summary plan description, which is mandated to be issued to participants by ERISA, that that rule was not collectively bargained, and that is... That's the ultimate dispute, but your predecessor argument is that the provisions, not of the master plan, but of Article 12.2, simply don't apply here. Well, the Joint Pension Committee does not have the power to determine questions about the proper timing of applications, the calculations of benefits, the payments of benefits. This dispute is not about eligibility. It's not only Article 12 of the plan. I would point to the definitional section in Article 2, which defines the Joint Pension Committee at Section 2.13, as the committee appointed to resolve questions relating to eligibility. But if you read further on, let me... Doesn't this 45-day rule, doesn't our interpretation of whether it's valid or not, affect the rights of employees applying for retirement allowances? It does. It is a rule of application for benefits, correct. And so we have in Article 12, it says the Joint Pension Committee shall have the powers necessary to determine the rights of employees applying for retirement allowances. Correct. And the company's position here is that that is circumscribed by its purpose for which it's formed, which is set forth both in Article... in Section 12.02 and in Article 2, and that is to determine questions of eligibility under the plan. That's a rather odd way. If eligibility simply meant are you a member of the plan or not eligible, why would you have this added clause about the rights of employees applying for or receiving retirement benefits? Well, that can be a function. It is a function of one's eligibility, Your Honor. Eligibility is defined in Article... I'm sorry, Your Honor? It's much broader than that. It is broader if it's read in isolation and without considering the purpose of the committee. But you can't read it without considering the purpose expressly set forth in the plan for which this committee is established, which is to determine eligibility. How did this matter get to the Joint Committee? The union members of the Joint Committee, the two members appointed by the union, brought it forward after the union first submitted a grievance under the Collective Bargaining Agreement, a routine union grievance under the CBA, where it was rejected. The union also originally sued below to compel arbitration under the CBA. The court below dismissed that claim and the union has not appealed from that. They've only appealed from the claim under the Joint Pension Committee provisions of the plan. And then what do you say about Section 1201? The argument has been made by the other side, as I understand it, that 1201 provides us with a rule of resolving if there's anything different in 12 than there is in the plan as a whole regarding the plan administrator's powers that has otherwise provided, i.e. as in 12, controls. Well, that is an exception, Your Honor. I would agree. Again, the exception in so far as Article 12 sets forth a committee that is empowered to make determinations as to eligibility, which could include disability retirements. It could include early retirements. And eligibility, again, encompasses membership in the union, holding an employment position in the bargaining unit covered by a Collective Bargaining Agreement, term of service. There are a number of components of eligibility. So to the extent the Joint Pension Committee takes up a question concerning eligibility, yes, it has powers. It is a fiduciary under the plan. And that exception set forth in would include those kinds of specific powers by the Joint Pension Committee. If we were to interpret 1202, though, by reference to the more specific and broader clause, which is to determine the rights of employees applying for and receiving benefits, then it would, it was if it was plain that it said that, that would then override the ability of the plan administrator rather than the Joint Pension Committee to make that determination. Well, it would set up a completely rivaled plan administrator, Your Honor. That's correct. It would, it would empower the Joint Pension Committee to override and alter any decision or determination of the plan administrator. And that is not what the plan says. And Your Honors have the powers of the plan administrator that are set forth the Record Appendix 292, which is extremely broad and specific in that it is to be accorded, the administrator's powers are to be accorded the greatest deference. Counsel, isn't your argument too broad? What we have is a specific dispute here, which you characterize as a dispute about eligibility, but your, the other side disagrees with you. To say that, to find that this particular dispute is arbitrable leads inexorably to the conclusion that the plan administrator has given up all of his or her powers does not in the least follow. I would respectfully disagree, Your Honor. I believe that the argument that the union is making here would set up a rival plan administrator in the person, the body of the Joint Pension Committee, which is not what the plan states and is inconsistent with the authority, the broad and specific authority set forth in Section 7.3 on Record Appendix 292 of the powers of the plan administrator. Every question can be recast as one of eligibility if one accepts the union's premise, but the union admitted here in its complaint, it admitted in its initial grievances submitted to the CBA that this is not a question of eligibility, that these two grievance are eligible for benefits and are receiving benefits. So that's not in dispute here. The union can recast any question. Anyone can recast a question through a little wordplay with all due respect to my brother's arguments as a question of service, whether it be any other question under the plan. Perhaps the company should not have agreed to the any disputes language when the JBC cannot reach an agreement. That's quite broad language. The any disputes again would be any disputes concerning eligibility, Your Honor. That would be the way we would urge that that be read. Yes, but you may urge it be read, but it doesn't say that. But again, the definitional section outside of just Article 12, the definitional section again defines the JPC's purpose as being to resolve questions of eligibility, which are not at issue here. And again, as you know, we've argued the plan administrator made a determination here under the Supreme Court's holdings, including Firestone and Conkright. That determination should be accorded deference. It doesn't mean that it is automatic as the union suggests that nothing could ever be questioned if deference is accorded. No, it means that it should receive the respect of this court if it's a reasonable interpretation of the plan and the plan administrator's case is reasonable. But isn't the question whether that defense can be asserted to the arbitrator in an arbitration? Well, you never get to arbitration, Your Honor. The arbitrator likewise is not a plan administrator. You only get to arbitration if there's a question of eligibility and the JPC deadlocks. So again, the arbitrator is not the plan administrator. The JPC is not the plan administrator. The plan administrator made a determination here, and that determination is entitled to the full deference that's available under the Supreme Court's precedence in Firestone and Conkright. All right. Are you aware of our more recent decision in Johnson Controls? I believe that was at the January case of this year under the Labor Management Relations Act. If that's it, I believe that was a Section 301 case. I don't believe that was an ERISA case or a case that concerned questions of deference under Firestone. No, you're correct. It did not, but it went to the broad reading that collective bargaining law requires we give to arbitration clauses. And Your Honor, that would not be applicable here. This is not a collectively bargained agreement. This is not a claim brought under Section 301 of the LMRA. The union had such a claim. They abandoned it. It was dismissed, and they have not appealed from it. This is solely a claim that's brought under the pension plan and under ERISA. So Section 301 of the LMRA would not be applicable to this analysis. I'm sorry. I thought your brother said that the references in the plan acknowledge the union. The Joint Pension Committee is composed half of union representatives and half of management, and they specifically assign certain tasks to the Joint Pension Committee. So I don't see why the law of collective bargaining agreements is irrelevant here. Your Honor, that is correct that the JPC is half management, half union represented, and there are four different Joint Pension Committees. And that was bargained for, wasn't it? It may have been bargained for at some point in time. I haven't seen a collective bargaining agreement that refers to that, Your Honor, but I would imagine at some point when the plan was established many years ago, that may have been a product of that. But again, this is not a collective bargaining agreement, so it cannot be interpreted as a CBA. And arbitrators under CBAs have certain powers and rights, and that's what Section 301... Okay, counsel, wrap it up. You've run out of time. Thank you, Your Honor. Again, we would urge that the deference that the Supreme Court recognized in Concord v. Frommert, which emphasized the complexity of ERISA, the stability, uniformity, and predictability that was valued in having a plan administrator interpret the provisions of ERISA-covered pension plans, that that deference be applied here, that the decision below be affirmed. Thank you, Your Honors. I do have two quick questions. Do you consider the 45-day rule as a term of the plan? It is a rule of the plan established by the plan administrator within the plan administrator's authority, and it is set forth in the summary plan description. It's not in the plan itself? It's not in the plan document, but an SPD is an ERISA-mandated document, and that's where the important rules for the participants are set forth, not in the plan document. But it's supposed to summarize what's in the plan. It does, and set forth the rules, such as the claims procedure, which the union refuses to pursue here. There is a claims procedure available to these grievance. That's not set forth in the plan. That is where it's supposed to be. That's in the summary plan description, and that gives the union grievance here the opportunity to make their argument to the plan administrator. They're not without an avenue. Thank you. Thank you, Your Honors. Thank you. At this time, would Attorney Litwin please take the podium and reintroduce himself on the record to begin? Your Honors, again, my name is Matthew Litwin, and I represent the unions. We believe we sufficiently addressed our principal arguments already. Well, then could you give me some examples of issues that would arise in a dispute under the plan that would not be eligibility? Yes. I ask because it seems that your argument as to how we should construe eligibility would swallow everything that would normally arise under the benefit claim procedures under the plan.  Well, we can think of it. You see the point in terms of I'm trying to find some limiting principle in your definition of eligibility that doesn't render the whole claims procedures under the plan irrelevant. That's right. If you had another point you wanted to make before your time goes, you can certainly make it. Um, Your Honors, I don't have another point to make, but if in any of the other judges have questions, I can. Okay. I think that Judge Kayada's question is a fair one, and I would like to invite each side to file within seven days a 28-J letter in response to it. Thank you. Thank you, Your Honors. That concludes argument in this case.